UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DESTINY RICHARDSON-GRAVES, | : | CIVIL NO: 1:13-CV-525 |
| | : | |
| Plaintiff | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| EMPIRE BEAUTY SCHOOL, *et al.* | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

I. **INTRODUCTION**.

The plaintiff, Destiny Richardson-Graves ("Graves"), filed this civil action pursuant to 42 U.S.C. § 1983, claiming that her right to procedural due process was violated by the defendants. Along with the complaint, Graves filed a request for leave to proceed *in forma pauperis*. For the following reasons, we recommend that Graves' request to proceed *in forma pauperis* should be granted, but as part of our statutorily-mandated screening process for *pro se* litigants desiring to proceed *in forma pauperis*, Graves' complaint should be dismissed, without prejudice, against all defendants for failure to state a claim. Should Graves endeavor to correct the defects cited in this Report and Recommendation, she must act within twenty-one (21) days of any dismissal order.

1

## II. BACKGROUND AND PROCEDURAL HISTORY.

Graves, proceeding *pro se*, filed her complaint on February 25, 2013, seeking compensatory damages and equitable relief against the following defendants: Empire Beauty School ("EBS"); Empire Education Group ("EEG"); Delia Sube ("Sube"), the president of EEG; Jackie Patten ("Patten"), the director of EBS; and the National Accrediting Agency for the Career of Arts and Sciences ("NAACAS"), the agency responsible for implementing and enforcing the policies and procedures to appeal decisions rendered by its schools. *See generally*, Doc. 1. Along with the complaint, Graves filed an affidavit, or declaration, in support of her request to proceed *in forma pauperis*. Doc. 2.

Graves' allegations stem from an incident on February 2, 2012, while she was enrolled at EBS. According to Graves, she had a "loud [verbal] argument" with another student on that date. *Doc*. 1 at 2. After the argument, Graves was allegedly informed by Patten that she would be suspended from attending classes for three days. *Id*. Graves claims that she asked Patten whether the other student would also be suspended, but she received no response in that regard. *Id*. Graves also claims that she told Patten that she would come by on the following school day to check whether the other student had also been suspended. *Id*. However, on the way home from EBS, Graves allegedly received a phone call from Patten whereby she was

informed that her enrollment had been terminated. *Id*. Graves claims that Patten did not provide an explanation. *Id*.

On several occasions, after her termination, Graves and her family allegedly attempted to contact Patten in an attempt to appeal the decision through a formal hearing. *Id*. Patten purportedly never responded, and Graves had no opportunity to appeal the decision. *Id*.

Graves contends that her Fourteenth Amendment procedural due process rights were violated by each defendant, in that she was not provided a formal hearing to be heard on EBS' decision to terminate her enrollment.

**III.    THE *IN FORMA PAUPERIS* STATUTE (28 U.S.C. § 1915).[1]**

Pursuant to 28 U.S.C. § 1915(a)(1), the Court may authorize the commencement of a civil suit, without prepayment of fees, by a "person" who submits an affidavit that includes a statement that the person is unable to pay such fees. Moreover, the statute authorizes the dismissal of a case, at any time, if the Court determines that the action fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). Thus, this Court must engage in a two-step analysis.

First, the Court must evaluate the litigant's financial status and determine

---

[1] This statute is not restricted to prisoner lawsuits. *Powell v. Hoover*, 956 F.Supp. 564, 566-67 (M.D.Pa. 1997).

whether (s)he is eligible to proceed *in forma pauperis*. *Roman v. Jeffes*, 904 F.2d 192, 194 n. 1 (3d Cir. 1990). The litigant seeking such status must establish that (s)he is unable to pay the costs of her suit. *Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989). Ordinarily, where an affidavit of poverty is filed, the plaintiff should be accorded a preliminary right to proceed *in forma pauperis*. *Lawson v. Prasse*, 411 F.2d 1203 (3d Cir. 1969).

Second, in conducting the preliminary screening of a § 1983 action, filed by a plaintiff proceeding *in forma pauperis*, dismissal for failure to state a claim is analyzed using the same standard as that used when considering a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6). *See Touscher v. McCullough*, 184 F.3d 236, 240 (3d. Cir. 1999); *see also Roman*, 904 F.2d at 194 n.1. With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), continuing with our opinion in *Phillips [v. County of Allegheny,* 515 F.3d 224, 230 (3d Cir.2008)], and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), pleading standards have seemingly shifted from simple

4

> notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–10 (3d Cir.2009).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler, supra*, 578 F.3d at 211. "A complaint has to "show" such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994). A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a

motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

In conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal,* 556 U.S. at 679.

Thus, following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'

> Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Tp.,* 629 F.3d 121, 130 (3d Cir.2010)(quoting *Iqbal,* 556 U.S. at 675 & 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson, supra,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 10-4710, 2013 WL 57895 at *4 (3d Cir. Jan. 7, 2013). Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

IV. **DISCUSSION**.

At the outset, we find that Graves has established an inability to pay, and we recommend that her request to proceed *in forma pauperis* be granted. Regarding whether Graves' complaint properly states a claim upon which relief may be granted,

and applying the above standards for the legal sufficiency of a complaint, we are compelled to recommend that the complaint be dismissed in its present form.

It is well-established that § 1983 does not by its own force create new and independent legal rights to damages in civil rights actions. Rather, § 1983 simply serves as a vehicle for private parties to bring civil actions to vindicate violations of separate, and pre-existing, legal rights otherwise guaranteed under the Constitution and laws of the United States. *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). Therefore, any analysis of the legal sufficiency of a cause of action under § 1983 must begin with an assessment of the validity of the underlying constitutional and statutory claims advanced by the plaintiff.

In this regard, it is also well-settled that:

> Section 1983 provides a remedy for deprivations of federally protected rights caused by persons acting under color of state law. The two essential elements of a § 1983 action are: *(1) whether the conduct complained of was committed by a person acting under color of state law*; and (2) whether this conduct deprived a person of a federally protected right. *Parratt v. Taylor,* 451 U.S. 527, 535 (1981).

*Boykin v. Bloomsburg University of Pennsylvania*, 893 F.Supp. 409, 416 (M.D.Pa. 1995), *aff'd*, 91 F3d 122 (3d Cir. 1996)(emphasis added). Thus, it is essential to any civil rights claim brought under § 1983 that the plaintiff allege and prove that the

defendant was acting under color of law when that defendant allegedly violated the plaintiff's rights. To the extent that a complaint seeks to hold purely private parties liable for alleged civil rights violations, it fails to state a valid cause of action under 42 U.S.C. § 1983 since the statute typically requires a showing that the defendants are state actors. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

In certain circumstances, however, a plaintiff can show that a private entity can act under color of state law. The determination of whether a private party defendant is a state actor is "necessarily [a] fact-bound inquiry." *Brentwood Acad.*, 531 U.S. 288, 298 (2001); *see Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) ("Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance."); *Crissman*, 289 F.3d at 233–34 ("Although little is straightforward in determining whether a private actor has acted 'under color of state law,' one directive emerges from the Supreme Court's jurisprudence: the facts are crucial.").

In *Brentwood Academy*, the Supreme Court identified several different factual approaches to aid in determining whether conduct is "fairly attributable" to government action:

> We have, for example, held that a challenged activity may be state

> action when it results from the State's exercise of "coercive power," *Blum*, 457 U.S., at 1004, 102 S.Ct. 2777, when the State provides "significant encouragement, either overt or covert," *ibid*., or when a private actor operates as a "willful participant in joint activity with the State or its agents," *Lugar*, *supra*, at 941, 102 S.Ct. 2744 (internal quotation marks omitted). We have treated a nominally private entity as a state actor when it is controlled by an "agency of the State," *Pennsylvania v. Board of Directors of City Trusts of Philadelphia*, 353 U.S. 230, 231, 77 S.Ct. 806, 1 L.Ed.2d 792 (1957) (per curiam), when it has been delegated a public function by the State, *cf*., *e.g*., *West v. Atkins*, *supra*, at 56, 108 S.Ct. 2250; *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 627-628, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), when it is "entwined with governmental policies," or when government is "entwined in [its] management or control," *Evans v. Newton*, 382 U.S. 296, 299, 301, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966).

*Brentwood Acad.*, 531 U.S. at 296.

The United States Court of Appeals for the Third Circuit suggests that these factual approaches are not tests that are different in operation, but rather "different ways of characterizing the necessarily fact-bound inquiry that confronts the Court in [each] situation." *Crissman*, 289 F.3d at 239 n. 12 (citing *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 939, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)). The Third Circuit has also characterized the approaches in two broadly-defined categories: the first category involves an activity that is significantly encouraged by the state or in which the state acts as a joint participant; the second category of cases involves an actor that is controlled by the state, performs a function delegated by the state, or is

10

entwined with government policies or management. *Leshko v. Servis*, 423 F.3d 337, 340 (3d Cir. 2005). Despite the characterization, the facts relating to defendant's challenged conduct must bear a "very significant relationship to the state." *Crissman*, 289 F.3d at 240.

Here, Graves simply alleges that EBS is a "private educational institution" and that the other defendants are either administrators or executives of that private institution. Beyond that, Graves does not allege any facts showing that the defendants' purported conduct is "fairly attributable" to government action. As a result, her complaint should be dismissed.

Furthermore, assuming, without finding, that Graves properly raised allegations that the defendants acted under color of state law, Graves' complaint should still be dismissed for failing to sufficiently allege a deprivation of a protected property interest. To establish a *prima facie* case of a procedural due process violation, a plaintiff must allege facts showing a state sponsored-deprivation of a protected interest in life, liberty or property, without notice and a reasonable opportunity to be heard. *Rusnak v. Williams*, 44 Fed.Appx. 555, 558 (3d Cir. 2002). Protected property interests do not derive from the due process clause itself, but must be predicated on "existing rules or understandings that stem from an independent source such as state law." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct.

11

2701, 2709, 33 L.Ed.2d 548 (1972); *Grabiak v. Pennsylvania State Police*, 276 F.Appx. 210, 212 (3d Cir. 2008).

In her complaint, Graves asserts that she maintains a protected property interest through Pa. Code § 12.8. But, she fails to allege any facts showing that it is factually plausible that the regulation applies to her case. In particular, Graves has not sufficiently shown how the regulation is applicable to EBS (and its administrators). Instead, Graves states a conclusion of law, which under *Twombly* and *Iqbal*, is insufficient to state a cause of action.

On these facts, the Court recommends that Graves' complaint be dismissed for failure to state a claim. It is further recommended that, Graves be granted leave to amend the complaint if she can sufficiently allege facts showing that the defendants acted under color of state law and that she was deprived of a protected property interest.[2]

**VI. RECOMMENDATION.**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that:

(1) Graves' request to proceed *in forma pauperis* (*Doc*. 2) be **GRANTED**; and

(2) Graves' complaint (*Doc*. 1) be **DISMISSED** for failure to state a claim,

---

[2] In addition to the pleading requirements set forth herein, the Court directs Graves to Fed. R. Civ. P. 10(b), which requires her to state claims in numbered paragraphs, "each limited ... to a single set of circumstances."

12

with leave to amend;

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this 2nd day of April, 2013.

*S/ Susan E. Schwab*
**Susan E. Schwab**
**United States Magistrate Judge**