UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DESTINY RICHARDSON-GRAVES, | : | CIVIL NO: 1:13-CV-00525 |
| Plaintiff | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| EMPIRE BEAUTY SCHOOL, *et al.*, | : | |
| | : | |
| Defendants | : | |
| | : | |

## REPORT AND RECOMMENDATION

### I. Introduction.

After an altercation with a fellow student, the plaintiff, Destiny Richardson-Graves, was suspended and then terminated from Empire Beauty School. Richardson-Graves filed this action raising federal constitution claims arising from the termination of her beauty-school education. The problem, however, is that Richardson-Graves has sued private entities who cannot be held liable for constitutional violations. Thus, the second amended complaint fails to state federal constitutional claims upon which relief can be granted, and we recommend that such claims be dismissed. We also recommend that the Court decline to exercise supplemental jurisdiction over any state law claims.

## II.  Background and Procedural History.

Richardson-Graves began this action by filing a complaint on February 25, 2013.[1]  On April 24, 2013, the District Court adopted the undersigned's Report and Recommendation that the case should be dismissed for failure to state a claim, with leave to amend.  After Richardson-Graves filed an amended complaint, the District Court granted her leave to file a second amended complaint, which Richardson-Graves filed on July 18, 2013.  *See Docs. 1, 5, 6, 7, 8, 9, & 10.*  The second amended complaint names as defendants the following entities and individuals: (1) Empire Beauty School; (2) Jacalyn Patton,[2] the executive director of Empire Beauty School; (3) Empire Education Group; (4) Delia Sube, an executive official of the Empire Education Group (these first four defendants are hereinafter referred to as the "Empire Defendants"); and (5) the National Accrediting Commission of Career Arts & Sciences (NACCAS).

---

[1]  We note that this is not the only case filed by Richardson-Graves about her termination from Empire Beauty School.  She also filed *Richardson-Graves v. Empire Beauty School*, 1:14-CV-00155 (M.D. Pa.).  By Order dated September 23, 2014, the District Court adopted the undersigned's Report and Recommendation that Richardson-Graves's federal claims be dismissed and that the state claims be remanded to the Court of Common Pleas of Dauphin County, Pennsylvania.  *See Richardson-Graves v. Empire Beauty School*, 1:14-CV-00155 (M.D. Pa.), *Doc. 40*.

[2]  Defendant Patton's name appears to be misspelled in the caption; however, we use the Empire Defendants' version, as we presume counsel knows the correct spelling of their client's name.

2

Richardson-Graves alleges that she attended Empire Beauty School for almost two months (from December 10, 2011 to February 2, 2012) during which time she maintained regular attendance and above average grades.  She alleges that she had no disciplinary infractions, no problems with staff, and, with the exception of one other student, no problems with other students.  According to Richardson-Graves, on or about February 2, 2012,[3] a loud verbal argument broke out between her and another student, who had continuously verbally abused and bullied her.  The argument was loud and contained profanity, but it did not involve physical contact because teachers separated the students.

On her way home after the altercation, Richardson-Graves received a phone call from defendant Patton telling her that she was suspended from school.  When Richardson-Graves asked Patton if the other student had also been suspended and stated that she would return to school the following Monday to "see," Patton construed the language as a threat and informed Richardson-Graves that she was terminated from Empire Beauty School.

Richardson-Graves alleges that on several occasions she and her mother and grandparents contacted "all relevant officials" at Empire Beauty School in order to appeal the termination or to, at least, receive a fair and impartial hearing.  All of

---

[3] The second amended complaint identifies the date of the argument as February 2, 2011; however, based on our reading of the entire document, we believe Richardson-Graves intended the year to be 2012.

Richardson-Graves's calls to Patton and Empire Beauty School went unanswered. On or about February 13, 2012, Richardson-Graves wrote a letter to defendant Sube in an attempt to appeal her termination, but Sube upheld the termination.  On November 6, 2012, Richardson-Graves filed a complaint with NACCAS, which responded on November 21, 2012, that it had closed its investigation of her complaint because its complaint process is designed as a tool to monitor compliance with their standards.

Richardson-Graves contends that Empire Education Group has an established disciplinary procedure that does not list termination as an option on a first offense.  She further alleges that the student handbook states that "physical violence and threats of violence can mean immediate dismissal/suspension without previous warning."  Per Richardson-Graves, during her initial enrollment and orientation, she never heard that a student who was involved in a dispute "where it involved either threats of violence or physical violence would result in immediate termination without an opportunity to be heard in a formal hearing."

Richardson-Graves contends that due to her termination from Empire Beauty School, her career opportunities have been harmed and her ability to obtain employment has been threatened, which hinders her ability to financially care for her two-year old daughter.

In her second amended complaint, Richardson-Graves claims that the defendants violated the Fifth and Fourteenth Amendments by denying her due process. As relief, Richardson-Graves is seeking declaratory and injunctive relief as well as compensatory and punitive damages.

In late April of 2014, the Empire Defendants and NACCAS respectively filed motions to dismiss the second amended complaint. We now address those motions, which have been fully briefed.

## III. Discussion.

### A.  Motion to Dismiss and Pleading Standards.

In accordance with Fed.R.Civ.P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769-70 (M.D. Pa. 2012). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to "show" such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994). A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902,

906 (3d Cir. 1997).  Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Tp.,* 629 F.3d 121, 130 (3d Cir. 2010)(quoting *Iqbal,* 556 U.S. at 675 & 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).  Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).  Thus, a well-pleaded complaint must

contain more than mere legal labels and conclusions.  Rather, a *pro se* complaint

must recite factual allegations that are sufficient to raise the plaintiff's claimed

right to relief beyond the level of mere speculation, set forth in a "short and plain"

statement of a cause of action.

**B.  Motion to Dismiss Based on the Arbitration Clause in the Enrollment Agreement.**

The Empire Defendants contend that the complaint should be dismissed and

Richardson-Graves should be compelled to arbitrate her claims against them.  They

rely on an arbitration clause in the Enrollment Agreement between Richardson-

Graves and EEG, Inc. t/a Empire Beauty School.  According to the Empire

Defendants, per the Enrollment Agreement, they have sent a demand to arbitrate to

Richardson-Graves, and have satisfied all of the conditions precedent to enforcing

the binding arbitration provision.  Moreover, they contend that the dispute in this

matter falls squarely within the scope of the arbitration provision of the Enrollment

Agreement.  In response, Richardson-Graves argues that the Enrollment

Agreement is unclear as to whether arbitration is binding and that the Agreement is

a contract of adhesion and is unconscionable.  The Empire Defendants do not

respond to Richardson-Graves's arguments, and instead they argue that she has

waived any opposition to the issue because she failed to address their arguments in

her opposition brief.  Richardson-Graves included her arguments regarding the

arbitration clause in the document she titled as her motion in opposition to the Empire Defendants' motion to dismiss, rather than in her brief.  But given that she is proceeding *pro se,* we will not deem her to have waived her arguments.

A dismissal based on a valid arbitration agreement is generally effected under either Fed.R.Civ.P. 12(b)(6) or Fed.R.Civ.P. Rule 56. *Defillipis v. Dell Fin. Servs.*, 3:14-CV-00115, 2014 WL 4198015, at *1 (M.D. Pa. Aug. 22, 2014).  The Third Circuit has set forth when a motion seeking to compel arbitration should be decided under the motion to dismiss standard of Rule 12(b)(6) and when it should be decided under the summary judgment standard of Rule 56:

> To summarize, when it is apparent, based on "the face of a complaint, and documents relied upon in the complaint," that certain of a party's claims "are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Somerset,* 832 F.Supp.2d at 482.  But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then "the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question." *Id.* After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013).

Here, the Empire Defendants have not responded to Richardson-Graves's arguments about the arbitration clause's applicability and enforceability. While Richardson-Graves's arguments in this regard may ultimately prove unavailing, given the lack of adequate briefing on the issue and the fact that Richardson-Graves may need discovery to prove her contentions regarding the enforceability of the arbitration clause, we conclude that it would be premature to dismiss the claims against the Empire Defendants based on the arbitration clause at this point in the proceedings.

### C.  The Complaint Fails to State a Federal Constitutional Claim Upon Which Relief Can Be Granted.

Richardson-Graves presents due process claims under both the Fifth Amendment and the Fourteenth Amendment.  Because we conclude that Richardson-Graves has not alleged facts from which it could reasonably be inferred that the defendants acted either under color of state law or under color of federal law, we conclude that the complaint fails to state a due process claim upon which relief can be granted.

Richardson-Graves's Fourteenth Amendment claim is brought under 42 U.S.C. § 1983.  "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v.*

*Penn Manor School Dist.,* 422 F.3d 141, 146 (3d Cir. 2005). Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Id.* To establish a claim under § 1983, the plaintiff must establish a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005). The requirement that a defendant act under color of state law is essential in order to establish a claim under § 1983. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Richardson-Graves's Fifth Amendment claim is a *Bivens* claim. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971). In *Bivens*, the Supreme Court recognized a private cause of action to recover damages against a federal agent for violations of constitutional rights. "A *Bivens* action, which is the federal equivalent of the [42 U.S.C.] §1983 cause of action against state actors, will lie where the defendant has violated the plaintiff's rights under color of federal law." *Brown v. Philip Morris Inc.,* 250 F.3d 789, 800 (3d Cir. 2001).

## 1. Color of State Law.

"Action under color of state law 'requires that one liable under § 1983 have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Harvey v. Plains Twp. Police Dept.*, 635 F.3d 606, 609 (3d Cir. 2011)(quoting *Abbott v. Latshaw,* 164 F.3d 141, 146 (3d Cir.1998)).  The Supreme Court has established a number of approaches to the question of when a private person acts under color of state law. *Crissman v. Dover Downs Entertainment, Inc.*, 289 F.3d 231, 239 (3d Cir. 2002). The United States Court of Appeals for the Third Circuit has "outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) 'whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state'; (2) 'whether the private party has acted with the help of or in concert with state officials'; and (3) whether 'the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.'" *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009)(quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)).  "The inquiry is fact-specific," *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995), and "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State

itself.'" *Brentwood Academy v. Tennessee Secondary School Athletic Assoc.,* 531 U.S. 288, 295 (2001)(quoting *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351 (1974)).

The defendants contend that they are not state actors, and Richardson-Graves has not alleged facts from which it can reasonably be inferred that the defendants acted under color of state law.  While Richardson-Graves asserts in her briefs that the defendants were acting under color of state law for a number of reasons, none of her asserted reasons have merit.

First, Richardson-Graves contends that the defendants were acting under color of state law because they were performing a traditional public function—education.  But "the relevant question is not simply whether a private group is serving a "public function." *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982).  Rather, "the question is whether the function performed has been 'traditionally the *exclusive* prerogative of the State.'" *Id.* (quoting *Jackson,* 419 U.S. at 353).  "That a private entity performs a function which serves the public does not make its acts state action." *Id.*  Here, Richardson-Graves has not alleged, nor could she have reasonably alleged, that cosmetology education is a function that has been traditionally the exclusive prerogative of the state. *See generally, Rendell-Baker,* 457 U.S. at 842 (holding the education of maladjusted high school students is not the exclusive province of the State); *Stone v. Dartmouth Coll.,* 682 F. Supp. 106,

109 (D.N.H. 1988)("Providing post-secondary education is not and has never been the exclusive prerogative of either the federal government or the individual states."). Accordingly, Richardson-Graves's argument that the defendants were acting under color of state law because they were performing a traditional public function fails.

Richardson-Graves also suggests that Empire Beauty School is licensed under the State Board of Cosmetology and is subject to the laws and provisions of that Board and of Pennsylvania. But the mere fact an entity is licensed by the state is "not enough to make a private entity a state actor." *Crissman*, 289 F.3d at 243 (citing *Moose Lodge v. Irvis,* 407 U.S. 163, 176 (1972)). Further, the fact that an entity is subject to governmental regulation does not mean that the entity is a state actor. *See Jackson v. Metro. Edison Co.,* 419 U.S. 345, 350 (1974) (holding that heavily regulated utility company was not a state actor); *see also Ecudero-Aviles v. Milton Hershey Sch.*, 1:11-CV-1858, 2012 WL 113660, at *3 (M.D. Pa. Jan. 13, 2012)("While private schools are regulated by the state, the fact that private parties are regulated by the state does not convert them into state actors."). Thus, the fact that Empire Beauty School is licensed by the state and subject to state regulation is insufficient to show that it was acting under color of state law.

Richardson-Graves also cites to parts of the Pennsylvania Public School Code and to a definition section of another Pennsylvania statute that defines a local

agency.  Those statutes, however, do not support an inference that the defendants were state actors or acted under color of state law.

While "challenged activity may be state action when it results from the State's exercise of 'coercive power'" or "when the State provides 'significant encouragement, either overt or covert,'" *Brentwood Academy,* 531 U.S. at 296 (quoting *Blum v. Yaretsky,* 457 U.S. 991, 1004 (1982)), Richardson-Graves does not allege facts from which it can reasonably be inferred that the alleged violation of her rights was the result of such.  She does not allege that Pennsylvania forced or encouraged the defendants' behavior.  In fact, she seems to suggest that the defendants failed to comply with state regulations.  Noncompliance with state law, however, does not turn a private defendant into a state actor. *See Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 172 (3d Cir. 2004).

Richardson-Graves also alleges that students of Empire Beauty School received federal financial assistance under Title IV of the Higher Education Act of 1965, and she alleges that she received federal financial aid in the form of grants and loans.  But the receipt of federal funds is not relevant to whether the defendants acted under color of state law. *See Berrios v. Inter Am. Univ.,* 535 F.2d 1330, 1332 (1st Cir. 1976)("The district court properly refused to take into account financial assistance from the federal government in considering the presence of state action."); *Rosario de Leon v. Nat'l Coll. of Bus. & Tech.,* 663 F. Supp. 2d 25,

34 (D.P.R. 2009)("Furthermore, the fact that National College is a recipient of Federal funds is of no consequence, since the issue before the Court is the nexus/joint action between National College and the State, not the federal government.").

Finally, Richardson-Graves suggests that the defendants are pervasively entwined with the government.  In *Brentwood Academy,* 531 U.S. 288 (2001), "the Court held that an interscholastic athletic association was entwined with the state where the great majority of the association's member schools were public, representatives of the schools acting in their official capacities selected members of the association's governing bodies, state officials also sat on those bodies in an ex officio capacity, the association was largely financed by gate receipts from member-school tournaments, and association employees participated in the state retirement system." *Benn*, 371 F.3d at 172-73 (3d Cir. 2004)(citing *Brentwood,* 531 U.S. at 298-300).  In this case, Richardson-Graves does not allege facts supporting an inference the defendants were entwined with the State in the sense set forth in *Brentwood.*

In sum, Richardson-Graves has not alleged facts supporting an inference that the defendants were acting under color of state law.  Additionally, her arguments in her briefs regarding the issue are without merit.

**2. Color of Federal Law.**

The same general criteria are used to determine whether a party acts under color of federal law as are used to determine whether a party acts under color of state law. *Nguyen v. U.S. Catholic Conference*, 719 F.2d 52, 54 (3d Cir. 1983).

Richardson-Graves asserts that NACCAS is subject to law and regulations set forth by the Department of Education, but, as discussed before, the fact that an entity is subject to governmental regulation does not mean that the entity is a governmental actor. *See Jackson,* 419 U.S. at 350 (holding that heavily regulated utility company was not a state actor).  Thus, the fact that NACCAS is subject to regulation by the Department of Education is not sufficient to establish that it acted under color of federal law.

Richardson-Graves also cites to 34 C.F.R. § 100.13, a definition section under Title VI of the Civil Rights Act.  But this does not help Richardson-Graves as she presents due process claims, not a claim under Title VI.

As set forth above, Richardson-Graves also alleges that students of Empire Beauty School received federal financial assistance under Title IV of the Higher Education Act of 1965, and she alleges that she received federal financial aid in the form of grants and loans.  But that students of the institution receive federal financial assistance is insufficient to show governmental action. *See Langadinos v. Appalachian Sch. of Law*, 1:05CV00039, 2005 WL 2333460 (W.D. Va. Sept. 25,

2005)("Nor is participation in federal student loan programs any indication that ASL is a governmental actor."); *Fischer v. Driscoll*, 546 F. Supp. 861, 867 (E.D. Pa. 1982)("Courts facing the issue have concluded that governmental financial assistance in the form of student aid is not sufficient to make the educational institution a governmental actor.").

In sum, Richardson-Graves has failed to allege facts supporting an inference that the defendants were acting under color of federal law.  And, as with her arguments regarding the color of state law, her arguments in her briefs regarding the issue are without merit.

### D.  Leave to Amend

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008).  The court "must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend." *Id.*  Here, Richardson-Graves has not alleged facts supporting an inference that the defendants were acting under color of state or federal law.  Further, although she presented numerous arguments in her briefs regarding whether the defendants were acting under the color of law, none of those arguments have merit.  Further, Richardson-Graves was previously granted leave to amend, and although she did amend her complaint, she still has failed to state a

claim upon which relief can be granted.  Also, as noted earlier, Richardson-Graves filed another case that raised substantially the same due process claims.  Under these circumstances, granting Richardson-Graves leave to amend would not be appropriate.

### E.  The Court Should Decline to Exercise Supplemental Jurisdiction Over Any State-Law Claims.

We have determined that the second amended complaint fails to state a federal claim upon which relief can be granted.  Although the second amended complaint does not clearly set forth state-law claims, at various places in the second amended complaint, Richardson-Graves mentions state law.  We recommend that the Court decline to exercise supplemental jurisdiction over any state-law claims.

Whether to exercise supplemental jurisdiction is within the discretion of the court.  28 U.S.C. § 1367(c)(3) provides that district courts may decline to exercise supplemental jurisdiction over a state-law claim if the district court has dismissed all claims over which it has original jurisdiction.  When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)(quoting *Carnegie-Mellon Univ. v. Cahill*, 484 U.S. 343, 350

(1988)).  The Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Miflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

There is nothing unique about this case such that considerations of judicial economy, convenience, and fairness provide an affirmative justification for exercising supplemental jurisdiction after the court disposes of the federal claims. Accordingly, we recommend that the court decline to exercise supplemental jurisdiction over any state-law claims.

## IV.  Recommendations.

Accordingly, for the foregoing reasons, it is recommended that the defendants' motions (docs. 24 & 27) to dismiss the second amended complaint be granted and that the case be closed.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and

all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this  25th  day of February, 2015.

***S/Susan E. Schwab***
Susan E. Schwab
United States Magistrate Judge
